[No. D003934. Fourth Dist., Div. One. Jan. 17, 1986.]

WESTERN STEEL AND SHIP REPAIR, INC.,
Plaintiff and Respondent, v.
RMI, INC., Defendant and Appellant.

**COUNSEL**

Latham & Watkins, Hayden J. Trubitt and Kim Ornelas-Conn for Defendant and Appellant.

Post, Kirby, Noonan & Sweat and Robert L. Friedenberg for Plaintiff and Respondent.

OPINION

**KREMER, P. J.**—RMI, Inc. (RMI) appeals from the trial court order denying its motion to quash a writ of attachment and release the attached property.

In this case the plaintiff obtained an ex parte prejudgment writ of attachment which, although a valid attachment, should not have been issued ex parte. ■ The relevant statutes permit a prompt challenge to the writ of attachment, but forbid review of whether it should have been issued without notice. Although this procedure provides no remedy for the trial court error of unnecessary ex parte issuance of an attachment writ, nevertheless we have concluded the pertinent statutes are valid, both because the prejudgment attachment remedy is confined to narrow circumstances, and also because the debtor may quickly challenge the attachment writ itself. Accordingly, for reasons we shall more fully state below, we will affirm the trial court order here, which denies a motion to quash an ex parte writ of attachment which should have been issued on notice.

Respondent Western Steel and Ship Repair, Inc. (Western) was RMI's subcontractor on a vessel overhaul job for the United States Navy. Western sued RMI in contract for unpaid amounts allegedly owing under the subcontract. On the day it filed the complaint, October 16, 1985, Western obtained an ex parte attachment of RMI's funds. The ex parte writ of attachment was obtained by authority of Code of Civil Procedure section 485.010[1] which requires a showing that great or irreparable injury will result if issuance of the writ of attachment is delayed for a noticed hearing. The showing of great or irreparable injury which Western made in the superior court to obtain the ex parte writ consisted of (1) an attorney decla-

---

[1]The statute governing the right to an ex parte attachment in advance of notice (Code Civ. Proc., § 485.010) provides in relevant part as follows: "(a) Except as otherwise provided by statute, no right to attach order or writ of attachment may be issued pursuant to this chapter unless it appears from facts shown by affidavit that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice. [¶] (b) The requirement of subdivision (a) is satisfied if any of the following are shown: (1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice. . . . [¶] (4) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice."

ration executed by Western's attorney, Friedenberg, saying he gave no notice of the attachment procedure, based on the statements contained in an attached declaration by Winthrop (President of Western) regarding "the shaky financial condition" of RMI and "probability that RMI, INC. would take action to conceal its assets if it had any notice of this proceeding, . . . ."; (2) the Winthrop declaration, which said RMI told Western it did not have the money presently to pay the claim against it and asked if Western would agree to settlement terms involving an 18-month payment schedule, and based on these facts and the "precarious financial condition of RMI" Winthrop believed if RMI were given notice of the attachment it would "take whatever steps were necessary to hide its assets so as to prevent attachment of these assets."

The next day, October 17, Western levied the writ against $45,510 in an RMI bank account. Later that day, unaware of the attachment, RMI issued payroll checks, which later were dishonored for insufficient funds on account of the attachment.

RMI first learned of the attachment the afternoon of October 17 when the bank refused to permit a routine withdrawal. RMI immediately attempted to attack the writ of attachment by an ex parte motion to quash. Counsel for both RMI and Western appeared before a judge the afternoon of October 17; the judge ruled that although a Judicial Council form used by the superior court (Judicial Council Form AT-170) permitted an ex parte attack on a writ of attachment, the statutes do not provide for such a procedure; accordingly, the judge treated the ex parte motion to quash as a motion to shorten time, which was granted, with a hearing set for the following day, October 18, on RMI's motion to quash the writ of attachment.

The hearing set for October 18 was that day continued to October 21, for unknown reasons. When the matter was heard on October 21, RMI contended (1) Western had not established probable validity of its claim (a requirement of prejudgment attachment) and (2) its showing of great or irreparable injury was insufficient to justify ex parte issuance of the writ. Western took the position the relevant statute governing the motion to quash, Code of Civil Procedure section 485.240, prevented reargument of the question of great or irreparable injury.[2] However, RMI argued it could

---

[2]Section 485.240 provides: "(a) Any defendant whose property has been attached pursuant to a writ issued under this chapter may apply for an order (1) that the right to attach order be set aside, the writ of attachment quashed, and any property levied upon pursuant to the writ be released, or (2) that the amount to be secured by the attachment be reduced as provided in Section 483.015. Such application shall be made by filing with the court and serving on the plaintiff a notice of motion. [¶] (b) The notice of motion shall state the grounds on which the motion is based and shall be accompanied by an affidavit supporting

not constitutionally be precluded from arguing the sufficiency of Western's showing in support of an ex parte writ of attachment.

During the hearing, the trial judge made statements which are somewhat conflicting and which cast in doubt his reasons for the ruling. At one point he appeared to refuse to consider the constitutional challenge; then later he indicated a belief in the statute's validity; and he did permit RMI to argue the question of great or irreparable injury, which permission could indicate his belief in RMI's entitlement to a hearing despite the statute. Regardless of what his reasons were, he eventually denied RMI's motion to quash the writ.

On its appeal from that order, RMI contends the trial judge shirked his obligation to rule on the statute's constitutionality, and also argues lack of justification for the ex parte issuance of the writ. RMI does not contend here that the attachment is otherwise improper, nor does the record reveal any serious dispute as to the validity of the underlying attachment, aside from questions as to the propriety of ex parte issuance.[3]

DISCUSSION

The specific requirements for an ex parte attachment are stated as follows in Code of Civil Procedure section 485.220: "(a) The court shall examine

any factual issues raised and points and authorities supporting any legal issues raised. It shall not be grounds to set aside an order that the plaintiff would not have suffered great or irreparable injury (within the meaning of Section 485.010) if issuance of the order had been delayed until the matter could have been heard on notice. [¶] (c) At the hearing on the motion, the court shall determine whether the plaintiff is entitled to the right to attach order or whether the amount to be secured by the attachment should be reduced. If the court finds that the plaintiff is not entitled to the right to attach order, it shall order the right to attach order set aside, the writ of attachment quashed, and any property levied on pursuant to the writ released. If the court finds that the plaintiff is entitled to the right to attach order, thereafter the plaintiff may apply for additional writs pursuant to Article 2 (commencing with Section 484.310) or Article 3 (commencing with Section 484.510) of Chapter 4. [¶] (d) The court's determinations shall be made upon the basis of the pleadings and other papers in the record; but, upon good cause shown, the court may receive and consider at the hearing additional evidence, oral or documentary, and additional points and authorities, or it may continue the hearing for the production of such additional evidence or points and authorities. [¶] (e) The hearing provided for in this section shall take precedence over all other civil matters on the calendar of that day except older matters of the same character."

[3]The claim is one for liquidated contract damages above the statutory minimum amount, is well pled and not frivolous, and is accompanied by the statutorily required affidavit that "the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." (Code Civ. Proc., § 485.210, subd. (c)(1); see also Code Civ. Proc., § 483.010, stating the general requirements for a proper claim for attachment, that the action be one for money damages, based on contract, liquidated or readily ascertainable, business-related when sought against an individual, and unsecured.) RMI has pleaded affirmative defenses to the claim, mainly that Western performed late and injured RMI's business relationships with the Navy, but the possible existence of defenses to the action do not make it an improper subject for an attachment.

the application and supporting affidavit and, except as provided in Section 486.030, shall issue a right to attach order, which shall state the amount to be secured by the attachment, and order a writ of attachment to be issued upon the filing of an undertaking as provided by Sections 489.210 and 489.220, if it finds all of the following: (1) The claim upon which the attachment is based is one upon which an attachment may be issued. [¶] (2) The plaintiff has established the probable validity of the claim upon which the attachment is based. [¶] (3) The attachment is not sought for a purpose other than the recovery upon the claim . . . . [¶] (4) The affidavit accompanying the application shows that the property sought to be attached, or the portion thereof to be specified in the writ, is not exempt from attachment. [¶] (5) The plaintiff will suffer great or irreparable injury (within the meaning of Section 485.010) if issuance of the order is delayed until the matter can be heard on notice."

In addition to the requirement of great or irreparable injury, the statutes governing ex parte attachments also require the attachment to satisfy the general requirements for prejudgment attachments. Those requirements here relevant are that the action be a claim for money, based on a contract, where the total claim is fixed or readily ascertainable and not less than $500 (Code Civ. Proc., § 483.010, subd. (a)); that the claim be unsecured (Code Civ. Proc., § 483.010, subd. (b)); and that the application for attachment be accompanied by an affidavit "showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based" (Code Civ. Proc., § 484.030).

█ Finally, the debtor on a motion to quash may attack either the validity of the attachment or its amount, but specifically may not argue the issue whether the writ should have been issued ex parte. The statute (quoted in full, *supra*) says, "It shall not be grounds to set aside an order that the plaintiff would not have suffered great or irreparable injury . . . if issuance of the order had been delayed until the matter could have been heard on notice." (Code Civ. Proc., § 485.240, subd. (b).)

As we have said, the statute, Code of Civil Procedure section 485.240, subdivision (b), precludes review of the issue of great or irreparable injury. The reason it does so is plain. Once having occurred, the levy without notice cannot be undone, and no remedy remains to the debtor other than to challenge the validity of the attachment, if he can. A noticed procedure, namely the motion to quash, is provided for making this challenge. At the hearing on such motion, the plaintiff has the burden of proving that the attachment itself is proper (*Loeb & Loeb* v. *Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1116 [212 Cal.Rptr. 830]). If he does so, there is no practical reason to quash the writ. The damage of ex parte issuance, even

if incorrect, has already been done. It would serve little purpose, and would waste time and judicial resources, to quash an otherwise properly issued writ because it should not have been issued ex parte. The issue of its validity has already been determined, and the creditor would have the immediate right to obtain another writ. Under such circumstances, the only benefit to be gained from reviewing the irreparable injury issue, and vacating the writ on that ground, would be an arguably discouraging effect upon creditors tending to prevent misuse of the ex parte procedure. However, such an effect would be very small, because the creditor who improperly obtained an ex parte attachment, had it quashed for that reason, and then immediately obtained another attachment, would be no worse off than if he had originally waited for a noticed procedure. (Of course, where malice could be shown in misuse of these procedures, other remedies exist for the debtor, such as abuse of process or wrongful attachment remedies, serving to deter such tortious conduct.)

Examining the facts here, we agree with RMI that insufficient justification for an ex parte writ of attachment was put before the trial court. The underlying declaration of Winthrop, President of Western, states no evidence other than RMI's immediate inability to pay to support his conclusion that "if RMI, INC. was given any notice at all of this hearing, RMI would take whatever steps were necessary to hide its assets so as to prevent attachment of these assets." Based on this declaration, Western's attorney submitted his declaration in support of the ex parte attachment saying no notice was given "based on the statements contained in the [Winthrop Declaration] . . . regarding the shaky financial condition of defendant RMI, INC., and the probability that RMI, INC. would take action to conceal its assets if it had any notice of this proceeding, . . . ." No evidence at all was presented of any past dishonesty, failure to meet obligations, or concealment of assets by RMI. These declarations are patently inadequate to meet the statutory requirement of a showing of "great or irreparable injury" based on an inference that "there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed . . . ." (Code Civ. Proc., § 485.010, subds. (a), (b).) We agree with RMI that neither a precarious financial condition nor refusal to pay a disputed claim warrants an inference that a debtor will abscond with all his assets or otherwise conceal them from the creditor.

Nevertheless, as we have said, any harm resulting from the issuance of the writ without notice, about 20 days sooner than would otherwise have occurred, is now essentially moot. If we were to quash the writ and release the properties of RMI from levy, Western would be immediately entitled to another writ of attachment. Absent some compelling justification, we are

reluctant to sanction such inefficient use of judicial resources and of litigants' time and money.

In the landmark case invalidating an earlier attachment statute, our Supreme Court specifically said the Legislature could draft a constitutionally valid prejudgment attachment statute, which exempted necessities and which permitted attachment before notice in "exceptional cases where, for example, the creditor can additionally demonstrate before a magistrate that an actual risk has arisen that assets will be concealed or that the debtor will abscond." (*Randone v. Appellate Department* (1971) 5 Cal.3d 536, 563 [96 Cal.Rptr. 709, 488 P.2d 13].) The Legislature clearly had *Randone* in mind when it drafted the attachment statutes replacing the one there invalidated, and the remedy discussed here clearly comports with the decisional language, requiring the creditor to demonstrate before a magistrate the existence of risk of concealment or loss. Nothing in *Randone* requires that if the magistrate errs in appraising the risk to the creditor, an otherwise legitimate attachment must later be vacated.

The court in *Randone* was primarily concerned with two evils: the attachment of property constituting the debtor's necessities of life; and the wrongful tying up of the property of a debtor, who was likely to be ignorant of the remedies to challenge such an attachment, and was therefore apt to be deprived of much-needed assets for protracted periods of time during possibly meritless litigation. Accordingly, the court considerably narrowed the permissible scope of the prejudgment attachment remedy, and the resulting legislation reflects the considerations articulated in *Randone*: the attachment remedy is narrowly limited to liquidated, nonfrivolous claims, and as against individual debtors, must relate to a business matter (Code Civ. Proc., § 483.010); the claim must be unsecured (*id.*); the writ will only issue upon affidavit that the property sought to be attached is not exempt (Code Civ. Proc., §§ 484.510, 484.350); and necessities of life are exempted (Code Civ. Proc., §§ 487.020, 704.010 et seq.); the writ can only issue after a noticed hearing, except where, as discussed, a magistrate can be convinced great or irreparable injury will result from delay and notice; and where the writ issues ex parte, a remedy is provided, the motion to quash, which has calendar preference and can be heard promptly (Code Civ. Proc., § 485.240, subd. (e)). Regardless of whether the writ issues on notice or ex parte, the creditor has the burden of demonstrating the validity of the attachment. (*Loeb & Loeb v. Beverly Glen Music, Inc., supra,* 166 Cal.App.3d 1110.) By these safeguards, it would appear the Legislature has done all that it can to comply with *Randone* and still provide an ex parte attachment remedy in limited circumstances.

These procedures fairly meet the concerns of *Randone*. We do not think the *Randone* court was concerned with a situation, as here, where the at-

tachment is not wrongful—where it is a legitimate prejudgment remedy—but where it was erroneously issued too soon. Under such circumstances, no real harm is done, and to provide the sanction of quashing the writ would waste the time of all concerned.

As we have mentioned, when RMI sought to vacate the writ of attachment by an ex parte procedure, the superior court refused to entertain that motion because the statutes governing attachments provide no such ex parte remedy to the debtor. An ex parte remedy is provided to vacate a specialized form of attachment, the temporary protective order (Code Civ. Proc., § 486.100), but the Legislature provided no corresponding remedy for the debtor subjected to a general prejudgment attachment. It could be argued (although the parties have not done so) that a certain unfairness results from this lack of mutuality which permits the creditor, but not the debtor, to obtain ex parte relief in the general attachment situation, and which somewhat inconsistently permits the debtor to obtain ex parte relief when the less onerous burden of a temporary protective order is involved.

■ Nevertheless, regardless of the lack of specific statutory authority for immediate ex parte relief to the debtor, the superior court clearly has the power to shorten time on the debtor's noticed motion to quash and in fact exercised that power here, originally setting RMI's motion for hearing within two days of the time the ex parte writ of attachment was granted. Also, such motions, as stated, are entitled to calendar preference. Further, we do not doubt the inherent power of the superior court, in a proper case, to vacate an improvidently issued ex parte attachment on an ex parte, but clear and convincing, showing by the debtor. Such power is part of the inherent power of the superior court (and of courts generally) to control litigation before it, to prevent abuse of its process, and to create a remedy for a wrong even in the absence of specific statutory remedies. (See generally 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, §§ 137-139, § 204; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 5, 6, 9; Civ. Code, § 3523 ["For every wrong there is a remedy"]; Code Civ. Proc., § 187 [power necessary to carry out jurisdiction].) As we have said, "Courts are not powerless to formulate rules of procedure where justice demands it." (*Adamson* v. *Superior Court* (1980) 113 Cal.App.3d 505, 509 [169 Cal.Rptr. 866], citing *Addison* v. *State* (1978) 21 Cal.3d 313, 318-319 [146 Cal.Rptr. 224, 578 P.2d 491].) The inherent power of courts to control their processes and orders and to prevent wrongful use of process has been noted in, e.g., *Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 148 [74 Cal.Rptr. 285, 449 P.2d 221]; *Arc Inv. Co.* v. *Tiffith* (1958) 164 Cal.App.2d Supp. 853, 857 [330 P.2d 305]. "Similar inherent power has been recognized as available to the court to prevent unfair results, although the relevant statute itself contains no provision for such limitation." (*Venice Canals Resident*

*Home Owners Assn.* v. *Superior Court* (1977) 72 Cal.App.3d 675, 680 [140 Cal.Rptr. 361].) The *Venice Canals* case, *supra,* notes that among other things, courts may waive statutory requirements (such as that of notice) "under appropriate circumstances." (*Id.,* at p. 679, citing *Biasca* v. *Superior Court* (1924) 194 Cal. 366 [228 P. 861].) Accordingly, we conclude that the absence of specific statutory authorization for an ex parte motion to quash a writ of attachment does not prevent the superior court, in a proper case, from granting a debtor immediate relief from an attachment improperly issued ex parte. Further, in this case, the speedy relief provided to RMI was very nearly the equivalent of an ex parte remedy.

We conclude that whatever were the reasons of the trial judge, he reached the correct result. The order denying the motion to quash the writ of attachment is affirmed.

Wiener, J., and Work, J., concurred.

A petition for a rehearing was denied February 13, 1986, and appellant's petition for review by the Supreme Court was denied April 16, 1986.