[No. H013194. Sixth Dist. Nov. 2, 1995.]

TOPA INSURANCE COMPANY, Cross-complainant and Appellant, v. FIREMAN'S FUND INSURANCE COMPANIES, Cross-defendant and Respondent.

1332

**COUNSEL**

Gibbons, Lees & Conley, John Lees, James M. Marzan and Peter A. Urhausen for Cross-complainant and Appellant.

Rivkin, Radler & Kremer, D. Douglas Shureen and Rebecca Berman Phelps for Cross-defendant and Respondent.

**OPINION**

**BAMATTRE-MANOUKIAN, J.**—Will a good faith settlement between the issuer of a blanket excess liability policy of insurance and its insureds, with respect to an occurrence assertedly covered by the policy, bar the claim of the issuer of a second excess liability policy, which assertedly covers the same occurrence, against the first insurer, for contribution of a proportionate share of amounts the second insurer is obliged to pay under its policy? The trial court concluded that the settlement would bar the second insurer's claim; the second insurer appeals. We disagree with the trial court's conclusion and shall reverse its order dismissing the second insurer's cross-complaint against the first insurer.

The record the parties have chosen to place before us does not provide all the factual details we might consider relevant, but for purposes of decision we take the following facts to be true.

The insureds, to whom we shall refer collectively as "Lohrey Enterprises," were the owners and operators of a dry cleaning business. In the course of its operation Lohrey Enterprises accidentally released a chemical solvent known as perchlorethelene (or perc or PCE) into an unpaved alley behind its place of business. The PCE, which is classified as a hazardous substance under federal and state laws, caused contamination of the property of a neighboring landowner, Stanton Road Associates (Stanton). Stanton sued Lohrey Enterprises in federal district court, seeking (among other relief) cleanup costs under the applicable federal statute and damages under state law.

There is an ongoing dispute as to the exact nature and scope of Lohrey Enterprises' insurance coverages, but it appears that Lohrey Enterprises owned six policies of insurance affording liability coverages arguably applicable to Stanton's claims: three primary policies each affording liability coverage to relevant limits of $500,000, and three policies which afforded coverage to specified limits for liabilities in excess of the limits of enumerated primary liability policies. Respondent Fireman's Fund Insurance Companies had issued one of the primary policies and also an excess umbrella policy with a policy limit of $1 million. Appellant Topa Insurance Company (Topa) had assumed the rights and obligations of another insurer under a second excess policy with a policy limit of $1 million. Another insurer provided both primary coverage and excess (to a limit of $2 million) coverage, and yet another provided the remaining primary policy.

Stanton's federal lawsuit went to trial in April 1991; the three primary insurers provided a defense subject to reservations of rights.

During trial the three primary insurers, including Fireman's Fund, agreed to contribute specified amounts to indemnify Lohrey Enterprises: Fireman's Fund and one other insurer each contributed the $500,000 limits of their primary policies, and the third insurer agreed to a structured settlement which it subsequently cashed out for $270,000.

Only Fireman's Fund's settlement with Lohrey Enterprises is documented in the record: by the terms of a written settlement agreement the parties agreed that Lohrey Enterprises would be entitled to submit a further claim for insurance coverage against Fireman's Fund, under Fireman's Fund's excess policy, only "in the event that total remedial costs and expenses as defined herein exceed $1,500,000 . . . ." "Remedial costs and expenses"

were narrowly defined, and Fireman's Fund reserved its rights to deny, contest or limit coverage under its excess policy.

Stanton recovered a $1.8 million judgment against Lohrey Enterprises. After an appeal (*Stanton Road Associates* v. *Lohrey Enterprises* (9th Cir. 1993) 984 F.2d 1015) Stanton and Lohrey Enterprises agreed to a settlement which required Lohrey Enterprises to pay slightly less than $1.5 million on the judgment as entered. Although the record does not make the point clear, it appears that Lohrey Enterprises remains potentially liable for additional cleanup costs in future. The parties to this appeal agree that Lohrey Enterprises has not yet claimed a right to be reimbursed for remedial costs or expenses, as defined in the Fireman's Fund settlement agreement, in excess of that agreement's $1.5 million floor.

In August 1992 Lohrey Enterprises sued Topa and the third excess insurer, seeking a declaration of Lohrey Enterprises' rights under the two excess liability policies as well as damages attributable to the two insurers' alleged denials of liability under the excess policies. Topa filed a cross-complaint against Fireman's Fund and other insurers which, as amended, prayed for a declaration that Topa, if found liable to Lohrey Enterprises, would be entitled to contribution from Fireman's Fund and the other insurers and for recovery from Fireman's Fund and the third excess insurer of their proportional shares of the amount for which Topa might be found liable.

In its answer to Topa's cross-complaint Fireman's Fund alleged its settlement with Lohrey Enterprises as an affirmative defense. Fireman's Fund then moved, under Code of Civil Procedure sections 877 and 877.6, for a determination that its settlement with Lohrey Enterprises was made in good faith and for an order dismissing Topa's cross-complaint against Fireman's Fund and barring Topa from asserting further claims against Fireman's Fund. Topa opposed the motion.

The trial court granted Fireman's Fund's motion, "both on the basis of [Code Civ. Proc., §§ ] 877 and 877.6 (see *Diamond Heights Homeowners [Assn.]* v. *National American Ins. Co.* [(1991)] 227 Cal.App.3d 563, 582 [277 Cal.Rptr. 906]), and on the basis of the Court's inherent equitable power. (*See, Western Steel [&] Ship Repair, Inc.* v. *RMI, Inc.* (1986) 176 Cal.App.3d 1108, 1116-1117 [222 Cal.Rptr. 556].)" The court entered a formal order barring further claims against Fireman's Fund by "parties to this action" unless and until "Lohrey's total remedial costs and expenses as described in the Fireman's Fund-Lohrey Settlement Agreement exceed $1,500,000 and Lohrey submits a further claim for insurance coverage to Fireman's Fund under [the excess policy]," and dismissing the third amended complaint, as to Fireman's Fund, "without prejudice."

Topa appeals from this order.

■ As a general rule an involuntary dismissal effected by written order of the court is appealable. (Cal. Civil Appellate Practice (Cont.Ed.Bar, 2d ed. 1985) § 2.10, p. 29; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 75, p. 99; cf. Code Civ. Proc., § 581d.) We take the trial court's determination that the involuntary dismissal should be without prejudice to mean no more than that if, at some indeterminate future time, Lohrey Enterprises should incur defined remedial costs and expenses in excess of $1.5 million and submit a further claim to Fireman's Fund, Topa would then be at liberty to file a new action against Fireman's Fund based on those new facts. We are satisfied that the order represents a final judicial determination of Topa's rights against Fireman's Fund in *this* action and therefore is appealable in accordance with the general rule.

Although appealable, the trial court's order did not purport to bar any potential claim by Topa against Fireman's Fund absolutely: in essence the trial court undertook simply to make any such claim subject to the same limitations applicable to a future claim by Lohrey Enterprises against Fireman's Fund under their settlement agreement. Neither party has addressed the question whether this distinction between an absolute bar and a limitation is or should be relevant to the issues the parties raise, and we perceive no need to address the issue sua sponte. ■ Upon the essentially undisputed facts we conclude (1) that under Code of Civil Procedure sections 877 and 877.6 Fireman's Fund's settlement neither barred nor limited Topa's claim against Fireman's Fund for equitable proration of excess coverages, and (2) that the trial court's order also exceeded the scope of the inherent judicial powers referred to in cases such as *Western Steel & Ship Repair, Inc. v. RMI, Inc.* (1986) 176 Cal.App.3d 1108 [222 Cal.Rptr. 556].

### 1. *Code of Civil Procedure Sections 877 and 877.6*

Code of Civil Procedure section 877 provides in pertinent part that "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, . . . [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater[; and] [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. [¶] . . . [¶] (d) This

section shall not apply to a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment given to a co-obligor on an alleged contract debt where the contract was made prior to January 1, 1988."

Code of Civil Procedure section 877.6 provides in pertinent part that "(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . [¶] . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

In their inceptions sections Code of Civil Procedure 877 and 877.6 addressed issues unique to *tort* litigation.

Code of Civil Procedure section 877 was enacted in 1957 as one of a series of provisions to abrogate common law rules (1) that there was no right of contribution among joint tortfeasors and (2) that a release given to one joint tortfeasor would operate to release all joint tortfeasors. (Cf. Comment (1958) 9 Hastings L.J. 180, 180-185.)

Code of Civil Procedure section 877.6, enacted in 1980, codified the Supreme Court's conclusions in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (developing on its earlier decision in *Li* v. *Yellow Cab Co.* (1978) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]) that "a concurrent tortfeasor may seek partial indemnity from another concurrent tortfeasor on a comparative fault basis" but that "a tortfeasor who has entered into a 'good faith' settlement . . . with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." (20 Cal.3d at p. 604; cf. *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580].)

Both sections were amended, by a single bill enacted in 1987, to add the references to "co-obligors mutually subject to contribution rights," "co-obligors on a contract debt," and "co-obligors" in the passages quoted above and to make conforming changes. The courts have assumed, rationally, that the Legislature intended the three terms to have a single meaning. (Cf. *Herrick Corp.* v. *Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 760-761 [34 Cal.Rptr.2d 844]; *Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 29 Cal.App.4th 435, 440, fn. 4 [34 Cal.Rptr.2d 520]; *Fireman's Fund*

*Ins. Co.* v. *Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1594, fn. 7 [26 Cal.Rptr.2d 762]; *Pacific Estates, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1561, 1571-1572 [17 Cal.Rptr.2d 434].) With specific reference to "co-obligors on a contract debt," one Court of Appeal has concluded that ". . . the plain language of the statute dictates the interpretation of this phrase refers to a contract dispute which itself is the subject of the underlying litigation," citing statements in the legislative documentation that " 'the primary rationale for the bill is "to encourage settlements in contract actions," ' " that the bill applies " 'the tort contribution and good faith settlement statutes to the settlement of obligations arising out of a joint contract,' " and that the purpose of the bill was " 'to encourage settlements of contractual disputes involving joint obligors.' " (*Id.* at pp. 1571-1572.) Subsequent cases have taken the phrases to mean "co-obligors on 'a' contract debt (singular)." (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 761; cf. also *Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th at p. 440, fn. 4; *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 21 Cal.App.4th at p. 1594, fn. 7.)

### a. *Joint Tortfeasors*

Manifestly neither Topa nor Fireman's Fund is a "joint tortfeasor," either with the other or with Lohrey Enterprises. (Cf. *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 760; cf. also *Pacific Estates, Inc.* v. *Superior Court, supra,* 13 Cal.App.4th at p. 1571.) Fireman's Fund acknowledges that it "is not technically a joint tortfeasor" within the meaning of Code of Civil Procedure sections 877 and 877.6.

Fireman's Fund nevertheless argues briefly that it should be treated, under Code of Civil Procedure sections 877 and 877.6 as though it *were* a tortfeasor because it should be perceived to be " 'equitably subrogated' " to, and to "stand in the shoes of," the tortfeasor, Lohrey Enterprises: "[Fireman's Fund's] underlying involvement in the lawsuit arises out of the tortious conduct of its insured. The liability for which [Topa] seeks 'contribution' from [Fireman's Fund] is a tort liability; the alleged liability of a tortfeasor, the insured, to the plaintiff, Stanton. Thus, because the underlying claim is for tort liability, it makes no difference that the parties litigating apportionment of the tort debt are not themselves tortfeasors."

Whether as a matter of sound judicial policy Topa and Fireman's Fund should be treated, for purposes of Code of Civil Procedure sections 877 and 877.6, like joint tortfeasors (or co-obligors) is an issue to which we shall shortly turn. But in the unambiguous terms of the statutes, insurers such as Fireman's Fund and Topa are (in the words of another court) "obviously

not" joint tortfeasors: "Insurers, in their role as insurers, do not commit the torts for which claimants seek to hold policyholders responsible. . . . [N]o reported decision has defined tortfeasor, as the word is used in the good faith settlement statutes, to include the *insurer* of a tortfeasor." (*Herrick Corp.* v. *Canadian Ins. Co.*, *supra*, 29 Cal.App.4th at p. 760.)

### b.   Co-obligors

The trial court's reference to *Diamond Heights Homeowners Assn.* v. *National American Ins. Co.* (1991) 227 Cal.App.3d 563, 582 [277 Cal.Rptr. 906], implies that the court concluded Fireman's Fund and Topa were in fact "co-obligors" within the meaning of Code of Civil Procedure sections 877 and 877.6.

The relevant question in *Diamond Heights* was whether, in the circumstances of record, primary insurers were entitled to settle a case for an amount which invaded excess coverage without the excess insurer's consent. (227 Cal.App.3d at p. 580.) The Court of Appeal concluded that a primary insurer could negotiate such a settlement, in good faith, "subject to certain conditions" (*ibid.*), reasoning in pertinent part that in the case before it the issue of good faith had been resolved at a Code of Civil Procedure section 877.6 hearing at which the excess insurer had had the opportunity fully to litigate the issue: "An appropriate time for the [excess] insurer to present objections to the settlement is, as occurred in the instant case, at the good faith confirmation hearing pursuant to section 877.6, if there is one. If the excess insurer asserts the right to object, and is accorded due process in presenting its objections to the settlement, and the trial court confirms the settlement as made in good faith, *the excess insurer stands in the position of a 'co-obligor' barred from making a claim of bad faith against the settling parties.* (§ 877.6, subd. (c).) The excess insurer's remedy, if aggrieved by the good faith confirmation, is to petition the court for writ of mandate. (§ 877.6, subd. (e).)" (227 Cal.App.3d at p. 582, italics added.)

It has been pointed out that *Diamond Heights* "did not elaborate on what it meant by 'stand[s] in the position' of a co-obligor." (*Herrick Corp.* v. *Canadian Ins. Co.*, *supra*, 29 Cal.App.4th at p. 760.) The Court of Appeal was not called upon to answer the question to which Code of Civil Procedure sections 877 and 877.6 are narrowly addressed—whether "any other joint tortfeasor or co-obligor" could claim contribution or indemnity from the settling primary insurer—and the court's conclusion that the excess insurer could no longer assert bad faith or collusion for a different purpose would not appear to have depended on whether the excess insurer was or was not a co-obligor. In this light the court's reference to " 'co-obligor' " might be

disregarded as superfluous, or at best gratuitous, without reaching the question whether the court meant that the excess insurer was or was not a co-obligor. Several courts have disagreed with the implication that the excess insurer *was* a co-obligor (cf. *Pacific Estates, Inc.* v. *Superior Court, supra,* 13 Cal.App.4th at p. 1572 [tortfeasor's insurer is not the *tortfeasor*'s "co-obligor"]; *Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th at p. 440, fn. 4 [primary and excess insurers (cf. also *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 21 Cal.App.4th at p. 1594, fn. 7) and multiple primary insurers are *serial* obligors on separate contracts, not *co*-obligors]; *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 761 [multiple primary insurers are not co-obligors]), and the *Diamond Heights* court itself has disavowed the implication, acknowledging "that insurers are, at most, serial obligors on separate contracts, not co-obligors on a contract debt . . . ." (*Hartford Accident & Indemnity Co.* v. *Superior Court* (1995) 37 Cal.App.4th 1174, 1181 [44 Cal.Rptr.2d 126].)

We are satisfied that Topa and Fireman's Fund are not co-obligors within the meaning of Code of Civil Procedure sections 877 and 877.6: as in the case of separate primary insurers, their respective obligations "arise strictly out of separate contracts" and thus "they are not co-obligors on 'a' contract debt . . . ." (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 761; cf. also *Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th at p. 440, fn. 4.)

### c. *Legislative and Judicial Policy*

In this court Fireman's Fund does not directly renew its assertion that it was a "co-obligor." Instead Fireman's Fund asks this court to construe Code of Civil Procedure sections 877 and 877.6 to bar—or at least, as we take it, to limit—Topa's claims against it, notwithstanding its explicit acknowledgment that it was not a "joint tortfeasor" and its implicit concession that it was not a "co-obligor," in light of "the legislative intent of those statutes . . . to foster the settlement of disputes." Fireman's Fund argues that "California courts have frequently expanded the precise language of the statutes to include situations which do not technically fall within that language. The reason is simple: the statutes were intended to foster the strong state interest in the settlement of disputes and the pre-trial resolution of litigation. . . . [¶] . . . The historically anomalous fact that insurer versus insurer disputes arise out of equitable considerations and do not fit squarely within the framework of tort or contract should not dissuade California courts from [granting] the same relief to insurers as they do to the tortfeasors whose disputes are the subject of the insurance coverage dispute."

We must consider Fireman's Fund's argument in light of well-established limitations upon a court's powers with respect to legislative enactments. Broadly, it is beyond our powers "to do more than construe the statutes as they have been enacted." (*Brown* v. *Hite* (1966) 64 Cal.2d 120, 129 [48 Cal.Rptr. 869, 410 P.2d 373]; cf. *Barton* v. *Panish* (1976) 18 Cal.3d 624, 630 [135 Cal.Rptr. 65, 557 P.2d 497].) "In the construction of a statute . . . , the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858.)

The cases Fireman's Fund cites as examples of courts' willingness to expand "the precise language of the statutes" do not violate these principles.

In many cases courts have construed the term "joint tortfeasor," as used in Code of Civil Procedure sections 877 and 877.6, quite broadly to apply not only to "those who act in concert in causing an injury" (cf., e.g., *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.*, *supra*, 139 Cal.App.3d at p. 282) but generally to "joint, concurrent and successive tortfeasors" (*id.* at p. 283; *Considine Co.* v. *Shadle, Hunt & Hagar* (1986) 187 Cal.App.3d 760, 767 [232 Cal.Rptr. 250]), and even more generally to "all tortfeasors joined in a single action" whose acts or omissions "concurred to produce the sum total of the injuries to the plaintiff." (*Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.*, *supra*, 139 Cal.App.3d at pp. 283, 284; cf. also *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 57 [200 Cal.Rptr. 136] [tortfeasor named only in cross-complaint for indemnity]; *Pacific Estates, Inc.* v. *Superior Court*, *supra*, 13 Cal.App.4th at p. 1571, citing *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 891 [225 Cal.Rptr. 159] [tortfeasors who are "likely defendants" although not yet named]; *Lopez* v. *Blecher* (1983) 143 Cal.App.3d 736, 740-741 [192 Cal.Rptr. 190] [individual rendered vicariously liable by statute for another's tort].) In each instance the court reached its conclusion not by adding language to the statutes but rather by exploring what the Legislature intended by the words "joint tortfeasor," a term which had been variously defined (cf., e.g., Prosser & Keeton, Torts (5th ed. 1984) §§ 46-47, pp. 322-330).

In *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796 [251 Cal.Rptr. 202, 760 P.2d 399], the Supreme Court considered whether the bar of subdivision (c) of Code of Civil Procedure section 877.6 against "any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault," would prohibit "a nonsettling party, who may be only vicariously or derivatively liable for a plaintiff's injury, from pursuing a claim for total equitable indemnity against a directly

or primarily responsible tortfeasor" who has entered into a good faith settlement. (46 Cal.3d at p. 804.) The Supreme Court concluded that subdivision (c) should be construed to bar a claim for total equitable indemnity: "'Total indemnification is just one end of the spectrum of comparative equitable indemnification.' [¶] . . . [T]here is no indication that the Legislature intended to distinguish some equitable indemnity claims from others or intended to leave a defendant who had entered into a good faith settlement vulnerable to a claim for total equitable indemnity. . . . [I]t appears reasonable to interpret the reference to claims for 'equitable comparative contribution, or partial or comparative indemnity' in section 877.6, subdivision (c), as embodying the entire spectrum of potential equitable indemnity claims." (46 Cal.3d at pp. 808-809, fn. omitted.) The Supreme Court went on to explain that its conclusion was consistent with the objects of section 877.6, which were to encourage settlements and to allocate costs equitably among multiple tortfeasors.

Although strongly criticized in a separate opinion (46 Cal.3d at pp. 817-823 (conc. and dis. opn. of Kaufman, J.), the Supreme Court's analysis in *Far West Financial* undertook no more than to give an arguable construction to terms the Supreme Court found in the statute as enacted.

In *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578 (decided two years before Code of Civil Procedure section 877.6 was enacted) the Supreme Court concluded in light of *Li* v. *Yellow Cab Co., supra,* 13 Cal.3d 804 (decided 17 years *after* section 877 was enacted) that the principles made applicable to contribution among tortfeasors by the legislative enactment of which section 877 was a part should apply, as well, to the court's newly announced concept of comparative partial indemnity. The Supreme Court's decision was not, and did not purport to be, a construction of existing statutory language. Nor, under the limitations of judicial power to which we have referred, could the Supreme Court have purported to add such a provision to the Code of Civil Procedure, by amendment of section 877 and cognate provisions or otherwise. Instead, the Supreme Court made clear that, although it was influenced by the construction and intent of the contribution statutes, it was announcing its new rules "under the common law of this state" (20 Cal.3d at p. 604), as "a modification of the common law equitable indemnity doctrine." (*Id.* at p. 599.) Although two years later the Legislature codified *American Motorcycle*'s rule in section 877.6, *American Motorcycle* itself is not an example of the kind of "expanded" construction Fireman's Fund asks us to give sections 877 and 877.6.

A proposal similar to Fireman's Fund's was directly confronted, and rejected, in *Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29

Cal.App.4th 435. Several insurers, including Hartford and Landmark Insurance Company, had provided liability insurance to an insured. The insured brought a bad faith lawsuit against Hartford, Landmark, and other insurers, asserting that the insurers had failed to defend and indemnify in connection with a third party claim. Hartford cross-complained against Landmark for contribution and indemnity. Landmark settled with the insured, and sought and obtained orders, under Code of Civil Procedure section 877.6, that its settlement had been in good faith and barred claims against it for contribution or indemnity. On this basis Hartford's cross-complaint was dismissed. Hartford appealed, arguing among other things that section 877.6 did not apply to Hartford's claims against Landmark.

The Court of Appeal agreed with Hartford. The court preliminarily rejected, for reasons we have discussed, Landmark's assertion that Hartford had been its co-obligor. (*Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th at p. 440, fn. 4.) The court then turned to the questions whether Hartford's claim was "one for equitable comparative contribution or indemnity based on comparative negligence or fault, and whether Hartford and Landmark can be classified as joint tortfeasors." (*Id.* at p. 440.) The court answered both questions in the negative, and concluded that Code of Civil Procedure section 877.6 had not been applicable to bar Hartford's claims, analyzing the distinction between joint tortfeasors and co-obligors, on the one hand, and multiple insurers, on the other, in terms which are broadly applicable to the case before us and on which we shall not attempt to improve:

     "A claim such as the instant one for contribution among insurers providing overlapping coverage for the same insured rests on equitable principles. [Citation.] However, in cases involving multiple policies covering the same loss, the courts have allocated the burden of paying among several insurers without reference to questions of the comparative fault or negligence of such insurers, because their obligation to protect the insured arises from a contract, *not* because the insurers were negligent or at fault. [Citation.] Thus, in cases involving duplicate or overlapping insurers the courts have prorated the responsibility by focusing on contractual issues rather than on 'fault' concepts [citation], and have ordered proration based on the proportion each insurer's coverage bore to the total coverage provided by all policies [citation].

"Section 877.6, subdivision (c) is limited to 'claims . . . for equitable comparative contribution—*based on comparative negligence or comparative fault.*' Because an action by one insurer seeking contribution from a nonparticipating insurer does not depend on 'fault' concepts but is based on an

equitable apportionment of the contractual undertakings [citation], the bar of section 877.6, subdivision (c) is inapplicable." (*Hartford Accident & Indemnity Co. v. Superior Court, supra*, 29 Cal.App.4th at pp. 440-441.)

Fireman's Fund argues that *Hartford* "ignores California case and statutory law and thwarts public policy." In essence Fireman's Fund reiterates its argument that Code of Civil Procedure sections 877 and 877.6 *should* apply: "Under *Hartford* a lone insurer involved in a multi-insurer coverage litigation can block or impair settlements in both the underlying and the coverage actions by cross-complaining against the settling insurer, no matter how reasonable the settlement between the co-insurer and the insured. This is because few insurers will enter into settlements with their insureds if faced with the threat of continuing litigation regarding the same claim from a co-insurer."

■ We do not reach this argument because, under the law, we cannot: regardless of its merits in the abstract, the argument does not afford a basis for *construing* the language of Code of Civil Procedure sections 877 and 877.6 as Fireman's Fund proposes, and we cannot *rewrite* the language. If insurers are to have the relief Fireman's Fund seeks by way of statute, then Fireman's Fund's argument must be urged to the Legislature rather than to the courts.

### 2. *Inherent Powers*

Alternatively Fireman's Fund argues in support of the trial court's conclusion that its order barring Topa's claims and dismissing its cross-complaint were within the scope of the court's inherent powers as defined in cases such as *Western Steel & Ship Repair, Inc. v. RMI, Inc., supra*, 176 Cal.App.3d 1108, which the trial court cited in its order.

In our view the trial court's order, and Fireman's Fund's argument in support of it, overtax the concept of inherent judicial powers to which *Western Steel* referred.

■ Both the statutes and the cases on which Fireman's Fund relies make clear that the concept relates primarily to *procedural* matters, typically to control the court's own process, proceedings and orders, but also may relate to situations in which the rights and powers of the parties have been established by substantive law or court order but workable means by which those rights may be enforced or powers implemented have not been granted by statute. (Cf., e.g., Code Civ. Proc., §§ 128, 187; 2 Witkin, Cal. Procedure, *supra*, Courts, §§ 137-147, pp. 160-171; 3 Witkin, Cal. Procedure, *supra*, Actions, §§ 3-9, pp. 34-40; 6 Witkin, Cal. Procedure, *supra*, Proceedings

Without Trial, § 212, pp. 517-518.) *Western Steel* recognized, in dictum, one narrow example of a superior court's inherent power to expedite proceedings to correct its own errors: "[T]o vacate an improvidently issued ex parte attachment on an ex parte . . . showing by the debtor." (176 Cal.App.3d at p. 1116.)

■ The matter before us does not come within the concept of inherent judicial powers as thus narrowly, and appropriately, confined to procedural innovations arguably essential to effective exercise of otherwise-granted jurisdiction or vindication of otherwise-established substantive rights or powers. What is involved in this case is what has been called "the substantive effect of a good faith determination . . . ." (*Far West Financial Corp.* v. *D & S Co.*, *supra*, 46 Cal.3d at p. 809, fn. 9.) The substantive effect of such a determination as between joint tortfeasors and co-obligors has been legislatively established. Were the substantive effect of such a determination as among multiple liability insurers to have been otherwise established, then arguably the trial court might have exercised its inherent powers to devise procedural remedies appropriate to that substantive effect. But the initial determination of that substantive effect is not within the concept of inherent powers to which *Western Steel* referred.

■ Of course courts do have an inherent *obligation* to *decide* cases properly brought before them, and from time to time courts will find it necessary for that purpose to announce dispositive substantive principles without direct guidance either from the Legislature or from the common law. Thus, for one of many examples, our Supreme Court in *American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d 578, 604, found it necessary, and appropriate, to announce "new common law principles" of partial equitable indemnity among concurrent tortfeasors. But even were we to treat Fireman's Fund's invocation of the "inherent powers" of the court as a proposal that we adopt common law rules, comparable to those codified for joint tortfeasors and co-obligors in Code of Civil Procedure sections 877 and 877.6, for multiple liability insurers, and even were we to be persuaded of the desirability of Fireman's Fund's proposal, we would decline to adopt such rules in this case for two reasons.

■ First, evaluation of the policy considerations Fireman's Fund has identified is, in our view, a function more appropriate to the Legislature than to the courts.

Second, we are satisfied that Fireman's Fund has adequate recourse under existing rules and procedures. Under principles outlined by the *Hartford* Court of Appeal, the reciprocal rights and duties of multiple issuers of

equivalent insurance for a covered occurrence would be governed by equitable principles. It should follow that a court called upon to adjudicate these rights and duties will adjust the equities in light of all the facts and circumstances of which it may be made aware. In short Fireman's Fund, if entitled as a matter of equity to special consideration with respect to Topa's claims in light of the settlement between Fireman's Fund and Lohrey Enterprises, should reasonably expect to receive that consideration in proceedings on Topa's cross-complaint. We rule only that in the present state of the law Fireman's Fund is *not* entitled to have Topa's claims barred—or limited—solely on the basis of a judicial finding that Fireman's Fund's settlement with Lohrey Enterprises was made in good faith.

Fireman's Fund also suggests that the trial court "may have recognized that under California law [Topa] did not have a viable cause of action against [Fireman's Fund]." Fireman's Fund's premise is that the excess policies issued by Topa and by Fireman's Fund in fact "did not cover the same loss or risk." We will not reach this argument, made essentially in passing in Fireman's Fund's brief, because the record the parties have chosen to put before us contains neither Topa's excess policy nor sufficient details of the occurrence. The question whether the two insurers did or did not have equivalent coverages will obviously be material, and presumably will be fully litigated on a complete record, in further proceedings on Topa's cross-complaint.

The order of dismissal is reversed and the matter is remanded to the trial court with directions to enter a new order which may recite that the settlement between Fireman's Fund Insurance Companies and Lohrey Enterprises, Inc., and related companies and individuals was made in good faith but may neither bar nor limit further claims against Fireman's Fund, nor dismiss Topa Insurance Company's cross-complaint against Fireman's Fund, on the basis of the finding of good faith. Topa Insurance Company shall recover its costs on appeal.

Cottle, P. J., and Wunderlich, J., concurred.