[No. G023065. Fourth Dist., Div. Three. June 25, 1999.]

DOUGLAS M. HOBBS, Plaintiff and Respondent, v.
DAVID WEISS et al., Defendants and Appellants.

## COUNSEL

Berman, Blanchard, Mausner & Resser, Bernard M. Resser and Eric Levinrad for Defendants and Appellants.

Morgan, Lewis & Bockius, Theodore G. Spanos and Andre Y. Bates for Plaintiff and Respondent.

## OPINION

**CROSBY, J.**—In *Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 266-267, footnote 11 [77 Cal.Rptr.2d 781], we expressed our frustration with law-and-motion judges who "refuse to hold oral hearings on critical pretrial matters of considerable significance to the parties. . . . Fair warning: Both written and oral argument are complementary parts of good judging and elemental due process."

We are here faced with such a critical pretrial matter in the statutory remedy of attachment, which allows creditors to levy on the debtor's property before trial. Bearing in mind our obligation to strictly construe this

purely statutory remedy, we hold the term "hearing" requires an oral hearing at which the court may take evidence, entertain and rule on evidentiary objections, and determine the merits based on written *and* oral presentations.

## I

Douglas M. Hobbs sued two tenants, David Weiss and Jacob Kasirer, for breach of a commercial lease agreement concerning a convalescent hospital in Costa Mesa. The lease was created in 1968 and, as amended, had a term of 25 years. A dispute arose in the mid-1980's that the landlord claims was settled by extending the expiration date an additional 10 years, or until 2005. The tenants deny the settlement agreement was ever finalized, making them holdover tenants who continued to occupy the property purely on a month-to-month basis.

In September 1997, the tenants informed the landlord that the operator of the convalescent hospital (their subtenant) had been decertified by the federal government and would soon be filing for bankruptcy. They stopped payment on their rent check and attempted to find a new operator. After the landlord sent them a 15-day notice of default, they announced they were unilaterally terminating the lease. They gave 30 days' notice, paid rent through October 31, 1997, and surrendered possession.

By verified complaint filed on October 16, 1997, the landlord elected to retake possession and terminate the lease, suing for future rent for its alleged unexpired term. On December 19, 1997, the landlord applied for an attachment of $69,000, the amount of unpaid monthly rent for the last three months of 1997 and for attorney fees. He declared he had attempted to relet the premises but "[has] not yet been able to secure a replacement tenant for the Premises." The tenants filed their opposition on January 20, 1998, claiming the amount was neither fixed nor readily ascertainable.

The matter was set for hearing on the afternoon of January 27, 1998, but the court took the matter off calendar because of illness. It never held an oral hearing. Later the same day, it directed Hobbs to prepare a right-to-attach order. The court issued the order in March 1998.

## II

■ The court lacked discretion to issue an attachment order without an oral hearing. Code of Civil Procedure section 484.040 provides, "No order or writ shall be issued under this article except after a hearing."

Because the term "hearing" is not defined in the Code of Civil Procedure, we examine the context of the statute, including the nature and purpose of a

hearing, to determine whether it necessarily encompasses an oral component. (*Lewis* v. *Superior Court* (1999) 19 Cal.4th 1232, 1245 [82 Cal.Rptr.2d 85, 970 P.2d 872] [cases involving peremptory writs may be "heard" by appellate courts without oral argument]; *Gwartz* v. *Superior Court* (1999) 71 Cal.App.4th 480 [83 Cal.Rptr.2d 865] ["hearing" in summary judgment statute requires oral argument]; *Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co.*, *supra*, 66 Cal.App.4th 257 [same].) As *Lewis* recognized, "in some circumstances, the Legislature did contemplate that the hearing of the matter would include an appearance and oral argument by the parties." (19 Cal.4th at p. 1249.)

The Legislature imposed a requirement for a noticed hearing on prejudgment attachment orders after California's existing procedure was invalidated in the landmark case of *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]. (See discussion in *Western Steel & Ship Repair, Inc.* v. *RMI, Inc.* (1986) 176 Cal.App.3d 1108, 1115 [222 Cal.Rptr. 556].)

*Randone* involved the attachment, without notice or hearing, of a bank account of the owners of a trucking company to satisfy an outstanding bill for legal services. Refusing to limit its holding to prejudgment wage garnishment, the court held procedural due process required that debtors be accorded a "meaningful opportunity to be heard prior to being subjected by force of law to a significant deprivation." (*Randone* v. *Appellate Department*, *supra*, 5 Cal.3d at p. 550.) The court noted the loss of use of one's property over a lengthy period of time "cannot generally be dismissed as merely a 'de minimis' [citation] or an 'insubstantial' [citation] deprivation." (*Id.* at p. 552.) Exceptions to the noticed hearing requirement were permissible only in "exceptional" cases where a creditor could show great or irreparable injury because the debtor may abscond or conceal the assets. (*Id.* at p. 563.)

The Legislature "clearly had *Randone* in mind" when drafting the current attachment statutes. (*Western Steel & Ship Repair, Inc.* v. *RMI, Inc.*, *supra*, 176 Cal.App.3d at p. 1115.) The code contains a variety of safeguards, including the requirement of a noticed hearing to prevent the evil of depriving debtors of "much-needed assets for protracted periods of time during possibly meritless litigation." (*Ibid.*)

That is also why the provisions regarding this purely statutory remedy are subject to "strict construction." (*Vershbow* v. *Reiner* (1991) 231 Cal.App.3d 879, 882 [282 Cal.Rptr. 684] [invalidating writ of attachment because of creditor's failure to post a bond even though debtors knew there was a lien on their property and never objected to the lack of an undertaking].) The

declarations in the moving papers must contain evidentiary facts, stated "with particularity," and based on actual personal knowledge with all documentary evidence properly identified and authenticated. (Code Civ. Proc. § 482.040.)

The hearing is the forum at which creditors must establish a prima facie case regarding their right to attach in general, their right to attach particular property, and the "probable validity" of the underlying claim. (Code Civ. Proc., § 484.090.)[1] In contested applications, ". . . the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." (*Loeb & Loeb* v. *Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1120 [212 Cal.Rptr. 830].)

Although it is "preferable" to make evidentiary objections in writing before the hearing, it is. not mandatory to do so. According to one leading treatise, "Evidentiary objections to declarations or exhibits offered by the opposition may be presented orally at the hearing." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 1 (The Rutter Group 1997) ¶ 4:272, p. 4-58.) The author further advises litigants of the "good practice" to bring document originals *to the hearing* in case a question or objection is raised." (*Id.*, ¶ 4:150, p. 4-34, italics added.)

The hearing is especially critical for the debtor, who has no other formal opportunity to respond to the creditor's reply papers, which may be filed as soon as two court days before the date set for the hearing. (Code Civ. Proc., §§ 484.060, subd. (c), 1005 subd. (b).) The same two-day deadline applies to the creditor's notice of opposition to the debtor's claim of exemption, an issue on which the debtor has the burden of proof. (Code Civ. Proc., §§ 484.070, subds. (f), (g).) No statutory provisions exist for the filing of supplemental papers, and there is little time to do so. Given these temporal constraints, the single opportunity for a meaningful response is at the hearing itself.

Here, Hobbs's reply papers presented new legal arguments and "a full development of arguments only hinted at in the opening paper. Deprived of a right to answer in writing (or forced to respond with an inherently obnoxious and collateral 'motion to strike'), the respondent has only oral

---

[1]The general requirements for prejudgment attachments include the following: The action must seek money, be based on a contract, where the total claim is fixed or readily ascertainable and not less than $500 (Code Civ. Proc., § 483.010, subd. (a)); that the claim be unsecured (Code Civ. Proc., § 483.010, subd. (b)); and that the plaintiffs make a showing that they "on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." (Code Civ. Proc., § 484.030.)

argument to address matters newly raised in the movant's reply paper." (Beckner, *Hold Your Nose* (1998) 25 No. 1 Litigation 57, 59.) The hearing is the one place where the parties may directly confront the judge who will rule on the right-to-attach order, explain their position, and address the judge's concerns.

The statute even contemplates the possibility that the hearing on the right-to-attach order may be an evidentiary one. It states, "The court's determinations shall be made upon the basis of the pleadings and other papers in the record; but . . . the court may receive and consider at the hearing additional evidence, oral or documentary . . . ." (Code Civ. Proc., § 484.090.) As the tenants point out, the very language of this statute presupposes a hearing in open court. Not only does the court have discretion to consider such new evidence, but it may allow the other side a continuance to submit supplemental papers. (Code Civ. Proc., § 484.080.)[2]

Hobbs interprets the statutory use of the term "may" as giving the court discretion not only to receive additional evidence at the hearing but to dispense with the requirement of an evidentiary hearing altogether. We disagree. How can a court properly exercise its discretion to admit or exclude evidence without knowing what that evidence is going to be?

Because of these substantial statutory prerequisites for attachment orders, the hearing on the right-to-attach order has been described as "similar to a bench trial . . . ." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 1, *supra*, ¶ 4:4, p. 4-2.) We cannot fathom how a proceeding can be likened to a bench trial when the bench is unoccupied and the courtroom door locked.

Attachment orders are demonstrably unlike prerogative writs in appellate courts, which issue only in limited circumstances of clear error and unusual exigency. There, as our Supreme Court has recently held, oral argument is unnecessary to assist the court in reaching a decision "because . . . . the 'petitioner's entitlement to relief is so obvious that *no purpose could reasonably be served by plenary consideration of the issue*' . . . ." (*Lewis* v. *Superior Court, supra,* 19 Cal.4th at p. 1259.) The situation is far different where plaintiffs, even before a trial, seek to convert their unsecured position to a secured one. Here, their entitlement to tie up the defendant's assets is far from obvious, and we cannot presume oral argument to be an "empty gesture," as the court did in *Lewis.* (*Ibid.*)

---

[2]If anything, the statutory procedures for prejudgment attachments contain a more expansive role for oral hearings than is the case for summary judgments which, as we noted in *Mediterranean Construction Co.* v. *State Farm Fire & Casualty Co., supra,* 66 Cal.App.4th at page 263, do not contemplate live testimony.

Conducting a "hearing" out of eyeshot and earshot disserves the legislative balance for prejudgment attachment orders and does not comply with *Randone*'s mandate for a meaningful opportunity to be heard. Corporations may be invisible legal creatures, but judges should not be, especially in situations where their discretion can be exercised in more than one way.

## III

There are compelling reasons for an oral hearing here. Hobbs brought up new cases and new facts in his reply papers, to which the tenants had no formal opportunity to respond. Not until his reply did Hobbs attach a copy of a signed settlement agreement that purportedly extended the underlying lease. The tenants contend this document was not properly authenticated and there was no proof they personally agreed to the settlement, as required, but "[b]ecause there was no hearing, Defendants were precluded from challenging that evidence. Moreover, the Court did not consider, nor rule on all of Defendants' evidentiary objections to the new evidence."

Hobbs also changed the theory by which he sought damages pursuant to the lease. This may affect his entitlement to a right-to-attach order because, under the attachment law, he must prove that his claim is for a "fixed" amount or one that is "readily ascertainable" by reference to the contract. (Code Civ. Proc., § 483.010, subd. (a).) As discussed above, he also must show he is likely to prevail on the merits.

Hobbs originally sought damages pursuant to Civil Code section 1951.2. As his attorney declared, "the Court could easily determine plaintiff's damages under Civil Code section 1951.2. To date, Plaintiff has been unable to find a replacement tenant. As a result, plaintiff's damages are simply the amounts still owing under the lease agreement between plaintiff and defendants."

However, as Hobbs has since acknowledged, Civil Code section 1951.2 is not applicable retroactively to pre-1971 leases. (Civ. Code, § 1952.2.) Because the instant lease was executed in 1968, Hobbs, by stipulation, filed an amended complaint omitting section 1951.2 damages and instead seeking damages pursuant to paragraph 25 of the original lease. The lease allowed Hobbs to recover damages for the excess, "if any," of the rent over "the then

reasonable rental value of the demised premises for the remainder of said term."[3]

The tenants contend this makes a material difference. Because this pre-1971 lease fell outside the parameters of Civil Code section 1951.2, Hobbs could not consider the lease still in existence and sue for the installments of unpaid rent as they became due. The tenants claimed his damages for the excess of the amount of the rent due over the reasonable rental value could not be "readily ascertainable" by reference to the contract as required by the attachment law. (Code Civ. Proc., § 483.010, subd. (a).) They strenuously disagree with Hobbs's interpretation of *Phillips-Hollman, Inc.* v. *Peerless Stages* (1930) 210 Cal. 253 [291 P. 178] (raised for the first time in his reply papers), but they never had an opportunity to present their views to the trial court.

We reverse for an oral hearing to determine the relative merits of the parties' positions before any right-to-attach order may issue. No costs on appeal are awarded in this interlocutory proceeding but may be awarded in the discretion of the superior court to the party ultimately prevailing at trial.

Sills, P. J., and Rylaarsdam, J., concurred.

---

[3]We grant the tenants' (unopposed) request to take judicial notice of their motion to strike from the complaint the first cause of action for Civil Code section 1951.2 damages and Hobbs's stipulation for filing an amended complaint. (Evid. Code, §§ 451, 452.)