104 Cal.Rptr.2d 803 (2001)
87 Cal.App.4th 738
Ted TITMAS, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
John Iavarone et al., Real Parties In Interest.
No. G027750.
Court of Appeal, Fourth District, Division Three.
March 6, 2001.
As Modified March 26, 2001.
*805 Charles E. Ruben, Los Angeles, for Petitioner.
No appearance for Respondent.
Duckor, Spradling & Metzger, John C. Wynne and Robert J. Solis, San Diego, for Real Parties in Interest.

*804 OPINION
CROSBY, J.
The attorney-client privilege (Evid.Code, § 954), one of the oldest privileges in our jurisprudence, seeks to encourage candid and open discussion. Courts understandably are chary of efforts to turn attorneys against their clients. (But see People v. Gionis (1995) 9 Cal.4th 1196, 1208-1213, 40 Cal.Rptr.2d 456, 892 P.2d 1199.) Whether dealing with attorney-client communications or attorney work product, even the liberal principles of discovery are "hardly intended to enable a learned profession to perform its functions ... on wits borrowed from the adversary." (Hickman v. Taylor (1947) 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (cone. opn. of Jackson, J.).)
Accordingly, we hold that when there is a prima facie claim of attorney-client privilege, the trial judge must accord a full hearing, with oral argument, before ordering the revelation of client confidences to the other side and, in effect, compelling attorney testimony against a client. The judge in this case (filling in for a vacationing colleague) erred in denying basic due process in this highly sensitive area.

I
Petitioner Ted Titmas invented and patented the Alkohol Stik, a saliva-based test designed to instantly test blood alcohol levels. He became the majority shareholder and chief executive officer in a Nevada corporation formed to produce and market the product.
Titmas hired plaintiffs John Iavarone as executive vice-president and John English as marketing vice-president. According to Titmas, they were partly compensated with stock in exchange for their oral promises to quickly raise more than $2 million in venture capital.
In October 1999, Titmas retained a law firm, Gage Frasier & Teeple ("GF & T"), to prepare a confidential private placement offering. He was disappointed with the results, which raised only $1.2 million. His relationships with plaintiffs soured, and he stopped paying them. They demanded that he step down, and he fired them.
Plaintiffs brought a shareholders' derivative action against Titmas, alleging he converted corporate assets to pay private debts, breached fiduciary duties by failing to manufacture the product, and diverted corporate opportunities to another company. They sought to remove him and to obtain a receiver. Titmas denied the allegations and cross-complained for damages and for rescission of the stock transfers to plaintiffs.
Plaintiffs noticed the depositions of Roland Frazier and Grant Teeple, two partners at GF & T, and served a subpoena for documents from GF & T's custodian of records. Titmas moved to quash the *806 subpoenas, declaring that he retained GF & T in his individual capacity and "am asserting the attorney client and work product privilege."[1]
Plaintiffs opposed the motion to quash on a variety of grounds, including waiver and the crime-fraud exception. They claimed that Titmas voluntarily disclosed his conversations with the attorneys in his declaration in opposition to plaintiffs' motion for a preliminary injunction. (The preliminary injunction was denied.) But plaintiffs also asked the trial court for "guidance with respect to the discoverability of all aspects of GF & T's relationship with defendants."
Although the case was on the docket of Judge David McEachen, the motion to quash came before Judge Brenner, who was filling in. Several hours before the hearing, the court clerk telephonically informed counsel the motion was denied: "The Court clerk notified the moving party's counsel ... that Judge Michael Brenner ruled on the Motion, and no appearance was required.... [¶] The Court ruled that the Motion to Quash the Subpoenas was denied, and that the attorney client privilege was waived."
Titmas sought a writ of mandate. We issued an order to show cause and stayed all proceedings pending our resolution of the issue. Despite our invitation to do so, plaintiffs did not file a return, thereby leaving us to accept all factual allegations in the petition as true. (Shaffer v. Superior Court (1995) 33 Cal.App.4th 993, 996, fn. 2, 39 Cal.Rptr.2d 506.)

II
We do not subscribe to the obscurantist notion that justice, like wild mushrooms, thrives on manure in the dark. As Presiding Justice Gilbert observed, "Just as a theater critic must see the play before writing a review, judges must carefully consider the evidence before deciding a case. The lifeblood of our judicial institutions depends upon judges rendering decisions that are the product of a reasoned and objective view of the law and the facts." (Rose v. Superior Court (2000) 81 Cal.App.4th 564, 572, 96 Cal.Rptr.2d 843.)
Rulings should be "reasoned decisions, rather than decisions with reasons...." (In re Rose (2000) 22 Cal.4th 430, 468, 93 Cal.Rptr.2d 298, 993 P.2d 956 (dis. opn. of Brown, J.), italics omitted) Because of basic due process concerns, law and motion judges are always on shaky ground where they "entirely bar parties from having a say." (Mediterranean Construction Co. v. State Farm Fire & Casualty Co. (1998) 66 Cal.App.4th 257, 265, 77 Cal.Rptr.2d 781 (Mediterranean); see also Monarch Healthcare v. Superior Court (2000) 78 Cal.App.4th 1282, 1286, 93 Cal. Rptr.2d 619 [criticizing pretrial orders which "issue like a `bolt from the blue out of the trial judge's chambers'"]; Gwartz v. Superior Court (1999) 71 Cal.App.4th 480, 83 Cal.Rptr.2d 865.) To this effect, courts have required an opportunity for oral argument in critical pretrial matters as to which there are genuine disputes of law or fact. (TJX Companies, Inc. v. Superior Court (2001) 87 Cal.App.4th 747, 104 Cal. Rptr.2d 810 (TJX) [demurrer to class action allegations]); (Rose v. Superior Court, supra, 81 Cal.App.4th 564, 96 Cal. Rptr.2d 843 [certain habeas corpus petitions]); (Hobbs v. Weiss (1999) 73 Cal. *807 App.4th 76, 77, 86 Cal.Rptr.2d 146 (Hobbs) [pretrial writs of attachment]; Mediterranean, supra, 66 Cal.App.4th 257, 77 Cal. Rptr.2d 781 [summary judgments]; but see Lewis v. Superior Court (1999) 19 Cal.4th 1232, 82 Cal.Rptr.2d 85, 970 P.2d 872 [oral argument not required for peremptory writs].)[2]
In the absence of a clear legislative directive for or against oral hearings, we examine the applicable statutory language and consider the context. In particular, we look to the following factors: (1) Does the statutory scheme, read as a whole, encompass an oral hearing? (2) Do the proceedings involve critical pretrial matters of considerable significance to the parties? and (3) Does the motion or other pretrial proceeding involve a real and genuine dispute? (See discussion in TJX, supra, 87 Cal.App.4th at pp. 750-751, 104 Cal.Rptr.2d 810.)
In Hobbs, for example, we reversed a pretrial attachment order because the trial court refused to allow oral argument. We concluded, "Conducting a `hearing' out of eyeshot and earshot disserves the legislative balance for prejudgment attachment orders and does not [afford] ... a meaningful opportunity to be heard. Corporations may be invisible legal creatures, but judges should not be, especially in situations where their discretion can be exercised in more than one way." (73 Cal. App.4th at p. 82, 86 Cal.Rptr.2d 146.)
Plaintiffs' understanding of cases such as Hobbs, expressed in their informal reply and at oral argument, is nasty, brutish and short. They point out that the statute authorizing motions to quash (Code Civ. Proc, § 1987.1) says nothing about hearings. They distinguish Hobbs as involving a more significant pretrial motion: "While the issues involved in the instant motion are important, `drastic' consequences are not at stake.... [T]he court has not deprived Petitioner of any property rights or stripped him of his day in court." They claim that the court could have protected Titmas through a protective order. They point out that Titmas had the last word on paper (in his reply memorandum of points and authorities), thereby preventing a last-minute ambush.
We disagree with these contentions and construe the statutory language and context to require the real-time presence of a judge in a courtroom, rather than the surprise call from a clerk and a signature on a minute order. Plaintiffs' statutory scrutiny takes too narrow a sweep. Code of Civil Procedure section 1987.1 allows a court to quash a subpoena or issue protective orders "upon motion reasonably made...." The Legislature's "use of the term `motion' (rather than `ex parte application') [has been interpreted to impose] the notice and hearing requirements generally applicable to motions." (St. Paul Fire & Marine Ins. Co. v. Superior Court (1984) 156 Cal.App.3d 82, 86, 202 Cal.Rptr. 571, italics added (St. Paul).) St. Paul annulled a discovery order regarding the taking of depositions that issued ex parte "without proper notice and opportunity to be heard." (Id. at p. 85, 202 Cal.Rptr. 571.)
Replete through the statutes and rules regarding motion practice are references to the terms "hear," "heard," and "hearing." Notice requirements are triggered by a time appointed for a "hearing." (Code Civ. Proc, § 1005; Cal. Rules of Court, rules 317(a), (c).) Failure to specify *808 a date and time (including a location) renders the notice ineffective. (Cal. Rules of Court, rules 311(b), 312(a); see also Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 368, 110 Cal.Rptr. 353, 515 P.2d 297 ["Although plaintiffs mailed copies of the ... papers to defendants' counsel ... defendants were given no notice of when the matter would be presented to the court and so had no. opportunity to be heard or to interpose objections to entry of the judgment"].) Moving parties are obliged to promptly notify the court "if a matter will not be heard on the scheduled date," and the court is empowered to drop any matter if no party appears "at a law and motion hearing...." (Cal. Rules of Court, rules 321(b), (d), italics added.)[3]
Moreover, plaintiffs misesteem the consequences of the court's blanket ruling that the attorney-client privilege had been waived, which left Titmas's transactional attorneys open to unlimited questioning regarding client secrets. (1 McCormick on Evidence (5th ed.1999) § 87, p. 346 ["A strong tradition of loyalty attaches to the relationship of attorney, and client, and this tradition would be outraged by routine examination of the lawyer as to the client's confidential disclosures regarding professional business"].)
Described as "a hallmark of Anglo-American jurisprudence for almost 400 years," the attorney-client privilege fosters the free and open exchanges of information and advice. (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 599-600, 208 Cal.Rptr. 886, 691 P.2d 642.) Without the privilege, it is theorized, the client would not freely speak, thereby limiting the attorney's ability to provide sound legal advice. (Southern Cal. Gas Co. v. Public Utilities Com. (1990) 50 Cal.3d 31, 37, 265 Cal.Rptr. 801, 784 P.2d 1373) ["If a lawyer could not promise to maintain the confidentiality of his client's secrets, the only advice he or she could provide would be, `"Don't talk to me"'"].)
The attorney-client privilege covers all forms of communication, including transactional advice and advice in contemplation of threatened litigation, "so a party should not ordinarily formulate a discovery request seeking `all documents transmitted to responding party's attorney.'" (Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 119, 68 Cal.Rptr.2d 844 (Wellpoint).)
The right to preserve attorney-client confidences thus presents as "critical" a "`pretrial matter[] of considerable significance to the parties,'" as did the pretrial writ of attachment in Hobbs. (73 Cal.App.4th at p. 77, 86 Cal.Rptr.2d 146.) The privilege, once lost, can never be regained. For "`once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.'" (Korea Data Systems Co. v. Superior Court (1997) 51 Cal.App.4th 1513, 1516, 59 Cal.Rptr.2d 925.) A protective order is of no avail, since the privilege applies even to disclosures to the court. (Evid.Code, § 915; Southern Cal. Gas Co. v. Public Utilities Com., supra, 50 Cal.3d at p. 45, fn. 19, 265 Cal.Rptr. 801, 784 P.2d 1373 [prohibiting in camera inspection of privileged documents to determine whether attorney-client privilege has been waived].)[4]
*809 In its codified form (Evid. Code, § 950 et seq.), the attorney-client privilege is accorded special status as a "`legislatively created privilege protecting important public policy interests (Korea Data Systems Co., supra, 51 Cal. App.4th at p. 1516, 59 Cal.Rptr.2d 925.) California courts are powerless to judicially carve out exceptions to the rule, even if other states freely do so. (Wells Fargo Bank v. Superior Court (2000) 22 Cal.4th 201, 209, 91 Cal.Rptr.2d 716, 990 P.2d 591 [declining to judicially create fiduciary exception to allow trust beneficiaries to discover privileged communications between trustee and trustee's attorneys: "We ... do not enjoy the freedom to restrict California's statutory attorney-client privilege based on notions of policy or ad hoc justification"].)
Next, Titmas's motion, far from being frivolous or insubstantial, has arguable merit. Because Titmas established that his conversations with the GF & T attorneys fell within the ambit of Evidence Code section 954, the burden shifted to plaintiffs (as the parties opposing the privilege) to demonstrate that the privilege did not apply, an exception existed, or that there was an express or implied waiver. (Wellpoint Health Networks, Inc. v. Superior Court, supra, 59 Cal.App.4th at p. 123, 68 Cal.Rptr.2d 844.)
Although we do not reach the merits of the privilege issue, we note the presence of evidence in the record that militates against a finding of waiver. Waiver is established where the client put the otherwise privileged communication "`directly at issue and that disclosure is essential for a fair adjudication of the action.'" (Wellpoint, supra, 59 Cal.App.4th at p. 128, 68 Cal.Rptr.2d 844.) As in Wellpoint, it may be too early in the litigation to make this determination. (Id. at p. 129, 68 Cal.Rptr.2d 844 ["the question could not be properly answered at the point when the trial court issued its order"].) We leave this factual dispute to the considered and careful adjudication on remand.
Finally, we are troubled by the summary procedures employed by the substituted judge who considered this issue in Judge McEachen's absence. The appearance of neutrality suffers when the replacement makes no appearance at all. (TJX, supra, 87 Cal.App.4th at p. 755, 104 Cal.Rptr.2d 810. ["Hearing oral argument is one of the best way we know for substitute judges to demonstrate to the satisfaction of the parties and the public that judicial responsibility has been exercised rather than abdicated"].) The vagueness of the order in question ("the attorney client privilege was waived") hardly inspires confidence that the court carefully reviewed the waiver claims and limited "the information required to be disclosed ... [to] fit strictly within the confines of the waiver." (Transamerica Title Ins. Co. v. Superior Court (1987) 188 Cal.App.3d 1047, 1052, 233 Cal.Rptr. 825.)
Let a peremptory writ of mandate issue directing respondent court to vacate its order denying petitioner's motion to quash and hold an oral hearing in conformance with the views expressed in this opinion. Our previously ordered stay is dissolved upon return of the remittitur. No costs are awarded for this interim proceeding, but may be allowed to the party ultimately prevailing in the discretion of the superior court.
SILLS, P.J., and O'LEARY, J., concur.
NOTES
[1] Titmas may have been unduly concerned about the need to show that GF & T was personally retained. Even if the attorney-client privilege rested with the corporation alone, plaintiffs would not have been entitled to privileged information simply because they brought a derivative action. (McDermott, Will & Emery v. Superior Court (2000) 83 Cal.App.4th 378, 385, 99 Cal.Rptr.2d 622 ["California courts have refused to carve out a shareholder exception to the attorney-client privilege, even in a derivative action"]; see also Smith v. Laguna Sur Villas Community Assn. (2000) 79 Cal.App.4th 639, 644, 94 Cal. Rptr.2d 321 ["There is no statutory exception for shareholders, even for closely held entities, and courts are powerless to elaborate upon the legislative scheme"]; Hoiles v. Superior Court (1984) 157 Cal.App.3d 1192, 204 Cal.Rptr. 111.)
[2] Other cases and commentators are in accord. (See Cal-American Income Property Fund VII v. Brown Development Corp. (1982) 138 Cal.App.3d 268, 273, fn. 3, 187 Cal.Rptr. 703 [speaking of the need for oral argument "in those complex law and motion cases where the decision has an immediate and dramatic impact upon the parties"]; Beckner, More Than A Paper Shuffle (1998) 25 No. 1 Litigation 57, 59 ["Contrary to decades of administrative law doctrine, in the courts in California a `hearing' happens only when real people talk and listen to each other.... This principle applies to any important matter that a court decides, whether a motion to dismiss for summary judgment, or an appeal"], italics added.)
[3] The code and rule provisions for telephonic appearances (Code Civ.Proc, § 1006.5), notice of nonappearance (Cal. Rules of Court, rule 321 (c)), and for tentative rulings (Cal. Rules of Court, rule 324(a)) envision a norm in which the "hearing" is conducted at a formally convened court session where it is possible for the parties to physically appear. That is precisely why they specify methods for departing from this norm when, for example, the parties are willing to submit on the papers or on the court's tentative ruling.
[4] That explains why writ relief, although reluctantly exercised in routine discovery disputes, may provide the only adequate remedy to prevent attorneys from forced disclosure of client confidences. (Mitchell v. Superior Court, supra, 37 Cal.3d 591, 208 Cal.Rptr. 886, 691 P.2d 642 [compelled disclosure of "factual" information from client to attorney]; Korea Data Systems Co. v. Superior Court, supra, 51 Cal.App.4th 1513, 59 Cal.Rptr.2d 925 [waiver of attorney-client privilege as discovery sanction]; Raytheon Co. v. Superior Court (1989) 208 Cal.App.3d 683, 686, 256 Cal.Rptr. 425 [compelled disclosure of documents shown by one codefendant to another].)