Filed 2/28/13  Maraziti v. Stone CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD J. MARAZITI et al., | D059749 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. 37-2010-00099817-CU-PO-CTL) |
| DAVID A. STONE, JR., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Richard J. Maraziti and Signature Log Homes, LLC (Signature, together with Maraziti, Plaintiffs) entered into a joint venture with David A. Stone, Jr. whereby they agreed to build log cabins on five unimproved lots owned by Stone in Big Bear, California.  In the underlying action, Plaintiffs filed a complaint against Stone for amounts allegedly due under the agreement.  Stone filed a cross-complaint alleging,

among other things, that Plaintiffs overcharged him for construction costs. Both sides failed to prevail on their respective claims.

Plaintiffs filed this action for malicious prosecution against Stone based on his prosecution of the cross-complaint. Plaintiffs appeal from an order granting Stone's special motion to strike their complaint under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute. (All undesignated statutory references are to the Code of Civil Procedure.) Plaintiffs contend the trial court erred in granting the anti-SLAPP motion because they established a lack of probable cause existed to file and prosecute the cross-complaint. They also argue that the trial court erred in refusing to lift the discovery stay to conduct discovery on the issue of probable cause. We reject their contentions and affirm the order granting the motion to strike.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs instigated the underlying action against Stone for amounts allegedly due under their contract. The trial court sustained Stone's demurrer to Plaintiffs' operative complaint on the ground Plaintiffs were unlicensed contractors and thus precluded from any recovery. Plaintiffs appealed from the judgment of dismissal and the appellate court affirmed.

Stone's operative cross-complaint against Plaintiffs alleged causes of action for breach of contract, fraud, breach of the covenant of good faith and fair dealing, and for money had and received. Among other things, Stone alleged that Plaintiffs failed to timely complete the log cabins and that he paid for materials and services used on third-

2

party projects. Stone also claimed that Maraziti and Signature were alter egos such that Signature's debts and liabilities should be treated as the debts and liabilities of Maraziti. The cross-complaint proceeded to trial without a jury and the trial court rendered a lengthy statement of decision finding that Stone would take nothing.

Briefly, the trial court concluded that Stone provided no proof that Maraziti was the alter ego of Signature and stated it would decide whether Stone was entitled to any recovery against Signature. After reviewing the evidence, the underlying trial court found that any documents fabricated by Stone did not impact the litigation and that Stone believed the validity of his claims. It concluded, however, that Stone was not entitled to any recovery because he failed to provide a qualified accounting of his profits and losses under the contract.

Plaintiffs then filed the instant action for malicious prosecution against Stone and his underlying attorneys. The underlying attorneys filed an anti-SLAPP motion and Stone filed a joinder to that motion. The trial court denied Plaintiffs' ex parte application for relief from the anti-SLAPP statute's automatic discovery stay (§ 425.16, subd. (g)) and for a continuance of the hearing date. After ruling on numerous evidentiary objections, the trial court granted the anti-SLAPP motion and issued a judgment in favor of Stone and his underlying attorneys. Plaintiffs timely appealed, but later dismissed the appeal as to Stone's underlying attorneys.

3

DISCUSSION

I. *Burden of Proof and Standard of Review*

A special motion to strike under section 425.16 allows a defendant to gain early dismissal of a lawsuit that qualifies as a SLAPP. (§ 425.16, subd. (a).) In ruling on an anti-SLAPP motion, the trial court must first decide whether the moving defendant has made a prima facie showing that the plaintiff's suit is subject to section 425.16, i.e., that the challenged claims arise from an act or acts in furtherance of his or her right of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).) If the defendant establishes the anti-SLAPP statute applies, the burden shifts to the plaintiff to demonstrate a "probability" of prevailing on the claim. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) In making that determination, the court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) "The evidence submitted by the plaintiff must be admissible [citation], and, if credited at trial, must support a judgment in his favor. [Citations.] Significantly, the trial court cannot and does not weigh the moving party's evidence against the opposing party's evidence, but addresses the factual and legal issues as in a motion for summary judgment. [Citation.] If the opposing party fails to make the requisite showing, the motion must be granted. [Citation.]" (*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 318.) We review de novo the trial court's rulings on an anti-SLAPP motion. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.)

4

II. *Analysis*

A.  Stone's Request to Disregard Portions of Plaintiffs' Opening Brief

Stone argues that we should disregard Plaintiffs' statement of the case because it consists of argument, rather than a fair summary of the facts.  The opening brief is required to "'[p]rovide a summary of the significant facts'" in the record, including "all the significant facts, not just those beneficial to the appellant."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 402; Cal. Rules of Court, rule 8.204(a)(2)(C).)  Plaintiffs' statement of the case does not conform to this requirement; however, we exercise our discretion to disregard the noncompliance.  (Cal. Rules of Court, rule 8.204(e)(2)(C).)

Stone also contends we should disregard Plaintiffs' arguments because they are supported by string cites to hundreds of pages of the record.  "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."  (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.)  We are unable to adequately evaluate which facts Plaintiffs believe support their position because they have provided us with block page references.  (*Spangle v. Farmers Ins. Exchange* (2008) 166 Cal.App.4th 560, 564, fn. 3.)  Instead of striking the brief, however, we have chosen to disregard the defects and consider the brief as if it were properly prepared.  (Cal. Rules of Court, rule 8.204(e)(2)(C).)

B.  Probability of Prevailing

Plaintiffs do not challenge the trial court's conclusion that their malicious prosecution claim fell within the purview of the anti-SLAPP statute.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 (*Jarrow*).)  Accordingly, we decide whether

5

Plaintiffs presented evidence sufficient to "[establish] that there is a probability that [they] will prevail on the claim." (§ 425.16, subd. (b)(1).)

To establish their claim for malicious prosecution, Plaintiffs were required to show that a prior claim initiated by Stone was (1) pursued to a legal termination favorable to the Plaintiffs, (2) brought without probable cause, and (3) initiated with malice. (*Villa v. Cole* (1992) 4 Cal.App.4th 1327, 1335.) Here, trial on Stone's cross-complaint resulted in a legal termination favorable to Plaintiffs. Thus, we examine whether Stone filed and prosecuted the cross-complaint without probable cause.

A party has probable cause to bring the underlying suit if, objectively viewed, its claims were legally tenable, meaning a reasonable attorney would conclude that the underlying action was not totally and completely without merit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 885 (*Sheldon Appel*).) However, "every case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proves nonmeritorious may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause. [Citations.]" (*Jarrow*, *supra*, 31 Cal.4th at p. 743.) Whether there was probable cause to initiate or continue to prosecute an action in light of the facts known to the malicious prosecution defendant is a legal question for the court to decide. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 875.) As we shall explain, Plaintiffs failed to show a probability of prevailing on the lack of probable cause element of their malicious prosecution claim.

6

As a threshold matter, we reject Stone's argument that probable cause existed as a matter of law because the underlying trial court denied Plaintiffs' motion for summary adjudication of Stone's cross-complaint. Stone is correct that the denial of a summary judgment motion in the underlying case can provide persuasive evidence that a suit does not totally lack merit. (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 383.) Here, the trial court's ruling shows it never examined the separate statements to determine whether triable issues of material fact existed. Rather, the trial court denied the motion on the technical ground that it could not summarily adjudicate the ten items listed in the motion under the version of the summary judgment statute that existed at that time. Accordingly, the denial of Plaintiffs' request to summarily adjudicate Stone's cross-claims in the underlying case is not a reliable indicator that probable cause existed.

Plaintiffs claim that Stone filed and prosecuted the cross-complaint without probable cause because he used fabricated documents to support his claims. Plaintiffs' argument, however, is conclusory as they failed to explain how any specific fabricated document impacted the litigation. In any event, the factual findings by the trial court show that any fabricated documents had no impact on the litigation.

In its statement of decision in the underlying action, the trial court noted that Maraziti presented the testimony of David Olekslow, a questioned document examiner. Olekslow testified that Stone "appeared to have" manipulated some e-mails, but the trial court found "[t]he effect of this so-called manipulation was marginal in the scheme of things." With regard to "'Sub-Rider A,'" Olekslow opined that it had never been attached to the principal agreement. The trial court concluded, however, that the significance of

7

Sub-Rider A was "collateral to the dispute" between the parties. Finally, the trial court found that the spreadsheets Stone offered to prove his expenditures and Olekslow's testimony that some of the spreadsheet entries "may have been duplications" to be unimportant because Stone testified that the spreadsheets were "'working documents'" and that he could not attest to their correctness.

Plaintiffs next claim that Stone continued to prosecute the cross-complaint or a portion of the cross-complaint without probable cause and without evidence justifying his claims. Specifically, Plaintiffs note that Stone initially requested over $3 million in damages, that Stone reduced the damage claim just before trial, and the trial court ultimately found that only $12,000 was at issue. Plaintiffs claim that Stone maliciously prosecuted $3 million in damages up until the moment he abandoned the claim. Plaintiffs cite the reduction in damages and *Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.* (2003) 114 Cal.App.4th 906 (*Citi-Wide*) to support their assertion that Stone lacked probable cause to continue prosecuting the cross-complaint because his damage claims were fabricated.

In *Citi-Wide*, the court held that a malicious prosecution suit may be maintained where most but not all of the amount sought in a prior action was claimed without probable cause. (*Citi-Wide*, *supra*, 114 Cal.App.4th at p. 914.) In that case, an insurer sued its insured for $7,861 in alleged unpaid premiums but then admitted that only $1,900 was owed. (*Id*. at p. 909.) Ignoring its admission, the insurer offered to settle for $7,900 several days before trial. (*Ibid*.) On the day of trial, the insurer dismissed the action with prejudice and signed a stipulation stating that the premiums had in fact been

8

fully paid.  (*Id*. at p. 910.)  On these facts, the appellate court concluded that the trial court improperly granted the insurer's in limine motion to preclude the insured from presenting any evidence at trial that the insurer lacked probable cause to prosecute the underlying action.  (*Id*. at p. 914.)  The appellate court reasoned that the insured had a right to have a trier of fact resolve the question of the insurer's knowledge or belief in the validity of its claims.  (*Id*. at p. 913.)

The instant action is distinguishable.  In response to form interrogatories, Stone claimed $1,527,455 in damages to personal property based on loss of material taken from job sites, labor fictitiously filed for lots 205 to 207, and damage to "[w]ater meters, cabinets, windows, stairway, thru bolts."  Stone claimed that he lost total income of $1,527,455 based on, among other things, the amounts overpaid and overbilled.  Finally, he claimed $1.6 million in other damages based on loss of anticipated net profit on lots 202 and 203.  Plaintiffs presented no evidence showing that these damage requests were false or that Stone made the claims believing they were false.  In contrast, Stone substantiated part of his claims with loss of profit and loss of income calculations for lots 206 and 207.

The trial court commented in its statement of decision that Stone initially sought about $3 million in damages and that he reduced his claim to about $46,700 before trial. However, it also noted that both parties "engaged in considerable discovery in preparation for trial" and presented a "staggering" amount of documentation.  The trial court, however, declined to find Plaintiffs liable under the contract because Stone failed "to provide a qualified accounting" of the contract profits or losses.  Unlike *Citi-Wide*,

9

Stone presented voluminous evidence to support his claim, but lost because he failed to present an accounting. Additionally, although the trial court denied Stone any recovery under the cross-complaint, it found that "Stone believe[d] he paid monies for items which he says he already paid Maraziti." These findings show that probable cause existed to file the cross-complaint.

Plaintiffs assert that Stone's claims for lost profits were not recoverable under the contract. To support this assertion, Plaintiffs cite the Miller and Starr treatise that an owner's measure of damages when a contractor breaches a construction contract is the difference between the balance due on the construction contract and the cost of completing the work. While this may be the correct measure of damages on a typical construction contract involving a contractor hired by a real property owner to construct improvements on real property, the contract here is not a typical construction contract. Rather, the contract expressly provided that the property and improvements thereon would be marketed for sale and "sold for profit." Thus, the parties clearly contemplated lost profits as a measure of damages when they entered into the contract. (Civ. Code, § 3300 ["For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."].)

In a one paragraph argument, Plaintiffs point out that Stone declared the contract "'null and void'" in a 2002 letter. However, they provided no argument or analysis explaining how this fact shows Stone lacked probable cause to file the cross-complaint

10

based on alleged breaches occurring before that date and underlying complaint filed in 2002. Accordingly, we deem the issue abandoned. (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 (*Landry*).)

Finally, Plaintiffs set forth portions of Maraziti's declaration which were not objected to below. They assert that these portions of the declaration, if believed, demonstrated a probability they would prevail in their malicious prosecution claim. They also argue that the trial court improperly sustained objections to other portions of the declaration that would have demonstrated a probability they would prevail in their malicious prosecution claim.

For purposes of analysis, we examined Maraziti's *entire* 23-page declaration to determine whether it contained evidence showing Stone lacked probable cause to file his cross-complaint, thus establishing a probability that Plaintiffs would prevail on the merits of their malicious prosecution claim. The first five paragraphs of the declaration established Maraziti's knowledge and authenticated certain documents. Maraziti next stated that Stone prosecuted his cross-complaint based on fabricated documents, that the summary adjudication motion was not decided on its merits, and then authenticated numerous documents. The balance of the declaration stated that Stone prosecuted his cross-complaint based on fabricated documents, that Stone knew the documents were fabricated, that Stone exaggerated his claims and then dropped most of them at the last moment, and that Stone failed to cooperate during discovery. Maraziti's supplemental declaration provided foundation for some exhibits and again attested that Stone altered numerous documents.

Maraziti's declarations do not contain evidence showing Stone lacked probable cause to file and prosecute the underlying cross-complaint. As we discussed above, the underlying trial court evaluated the documents that Stone allegedly falsified, but nonetheless concluded that the fabricated documents did not impact the litigation. Based on these findings, Stone's delay in providing any documents could not have affected the litigation. While Plaintiffs suggest in their reply brief that the underlying trial court did not have all of the fabricated documents and thus did not consider all of the evidence, Plaintiffs failed to cite any particular document and explain how the document established that Stone lacked probable cause to prosecute the underlying cross-complaint.

Finally, Plaintiffs contend that the trial court erroneously excluded some of the documents they presented in opposition to the anti-SLAPP motion. Assuming, without deciding, that the trial court erroneously excluded these documents, Plaintiffs again failed to explain *how* these documents established that Stone lacked probable cause to prosecute the cross-complaint. Plaintiffs argued some of the excluded documents reveal that Stone "made a huge profit and suffered no loss." Accordingly, they conclude that Stone maliciously sought over $3 million in damages. These documents were escrow closing statements on two of the lots showing money due to Stone. However, as the trial court impliedly noted in deciding the underlying action, evidence showing purported profits or losses are meaningless without an accounting.

Plaintiffs failed to show a probability of prevailing on the lack of probable cause element of their malicious prosecution claim. Accordingly, the trial court properly granted the motion to strike.

12

C.  Denial of Plaintiffs' Request for a Continuance and for Discovery

The filing of an anti-SLAPP motion automatically stays "[a]ll discovery proceedings."  (§ 425.16, subd. (g).)  To justify lifting the discovery stay, the plaintiff must demonstrate that the proposed discovery is both necessary in the context of the issues raised by the anti-SLAPP motion and must explain what facts the plaintiff expects to uncover.  (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 593.)  The decision whether to lift the discovery stay is within the trial court's discretion.  (*Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 617.)

Here, Plaintiffs requested that the trial court continue the hearing on the anti-SLAPP motion to allow them to conduct discovery on whether Stone's counsel (1) did a forensic analysis of Sub-Rider A or other allegedly fabricated documents, and (2) objectively analyzed Stone's damage claims, including any expert analysis.  Plaintiffs sought to depose Stone, any experts, Stone's attorneys, and the person most knowledgeable regarding the authenticity of documents and damages.  The trial court denied the request, ruling that the information Plaintiffs sought was covered by the attorney-client privilege and the attorney work product doctrine.

Plaintiffs assert the trial court abused its discretion when it denied their request to conduct limited discovery because Stone waived the "work product privilege" when his attorneys asserted that they reviewed documents relating to the dispute, gave their impressions, and expressed their belief that probable cause existed for the cross-claims. We reject their assertion.

As the party opposing the attorney-client privilege, Plaintiffs had the burden of establishing that the privilege did not apply, that an exception existed, or that there was an express or implied waiver.  (Evid. Code, §§ 912, 917, subd. (a); *Titmas v. Superior Court* (2001) 87 Cal.App.4th 738, 745.)  Plaintiffs, however, cited no authority and provided no analysis to support their assertion that Stone waived either the attorney-client privilege or the protection afforded by the attorney work product doctrine.  Plaintiffs similarly cited no authority and provided no analysis to support their implied assertion that the trial court erred when it concluded that discovery would be futile because the information they sought was covered by the attorney-client privilege or the attorney work product doctrine.  Plaintiffs also failed to show how Stone or Stone's attorneys disclosed a significant part of work product so as to waive the protection afforded by the attorney work product doctrine.  (*OXY Resources California LLC v. Superior Court* (2004) 115 Cal.App.4th 874, 891.)  Accordingly, we deem these issues abandoned.  (*Landry*, *supra*, 39 Cal.App.4th at pp. 699–700.)  In any event, we reviewed the declarations filed by Stone's attorneys in opposition to the anti-SLAPP motion and conclude that the declarations set forth nonprotected information based on the personal knowledge of the declarants and do not disclose any confidential communications with Stone.

Plaintiffs also assert that some of the discovery they sought was not subject to the attorney-client privilege or attorney work product doctrine.  However, they failed to detail how additional discovery on the matters raised in their discovery request was necessary in the context of the issues raised in the anti-SLAPP motion.  (*The Garment Workers Center v. Superior Court* (2004) 117 Cal.App.4th 1156, 1162.)  In their ex parte

14

application for discovery, Plaintiffs strenuously argued that Stone's exaggerated damage claims and falsified documents showed a lack of probable cause to prosecute the underlying cross-complaint. As the underlying trial court noted in its statement of decision, both parties "engaged in considerable discovery in preparation for trial" and presented a "staggering" amount of documentation. After reviewing all the evidence, the underlying trial court concluded that the fabricated documents did not impact the litigation, Stone believed the validity of his claims, and Stone's failure to provide a qualified accounting doomed his claims. Plaintiffs have not detailed what nonprivileged information they hoped to uncover and it appears no amount of discovery could undermine this strong evidence of probable cause.

On this record, Plaintiffs have not shown that the trial court abused its discretion in denying their discovery request. Having failed to make their case for discovery, Plaintiffs necessarily failed to show good cause for a continuance.

## DISPOSITION

The order is affirmed. Respondent is entitled to his costs on appeal.

MCINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

15